UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KIMBERLY ANN RUSAK,

    Plaintiff,

v.

KILOLO KIJAKAZI,

    Defendant.

CIVIL ACTION NO. 3:23-CV-00221

(MEHALCHICK, M.J.)

**MEMORANDUM**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Kilolo Kijakazi, Acting Commissioner of Social Security (hereinafter, "the Commissioner"), denying Plaintiff Kimberly Ann Rusak's ("Rusak") claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be **AFFIRMED.**

I. **BACKGROUND AND PROCEDURAL HISTORY**

On November 28, 2019, Rusak filed an application for disability insurance benefits, alleging disability beginning on April 2, 2015. (Doc. 1, ¶ 5). Rusak's claims were initially denied by the Social Security Administration on November 25, 2020. (Doc. 1, ¶ 6). Thereafter, Rusak filed a request for a hearing, which was held before Administrative Law Judge Michele Stolls ("ALJ") on February 24, 2022. (Doc. 1, ¶ 7). In a written opinion dated March 7, 2022, the ALJ determined that Rusak was not disabled and, therefore, not entitled to the benefits

sought. (Doc. 1, ¶ 8). Rusak appealed the decision to the Appeals Counsel, who denied Rusak's request for review on December 7, 2022. (Doc. 1, ¶ 10).

On February 6, 2023, Rusak initiated the instant action by filing a complaint. (Doc. 1). The Commissioner responded on April 5, 2023, providing the requisite transcripts from the disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Rusak alleging three errors warranting reversal or remand. (Doc. 11; Doc. 15; Doc. 16).

## II.  STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

### A.  ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now-familiar

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

five-step analysis." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

    B.   J<small>UDICIAL</small> R<small>EVIEW</small>

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r of Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Rusak is disabled, but whether the Commissioner's determination that Rusak is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

III. **THE ALJ'S DECISION**

In her written decision, the ALJ determined that Rusak "was not under a disability, as defined by the Social Security Act, at any time from October 21, 2019, the amended alleged onset date, through December 31, 2020, the date last insured." (Doc. 8-2, at 31). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. At the onset, the ALJ determined that Rusak last met the insured status requirements of the Social Security Act on December 31, 2020. (Doc. 8-2, at 14).

A. **STEP ONE**

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the

Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Rusak "did not engage in [SGA] during the period from her alleged onset date of October 21, 2019, through her date last insured of December 31, 2020." (Doc. 8-2, at 14).

    B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that Rusak had the following medically determinable severe impairments: degenerative disc disease and degenerative joint disease of the cervical spine with radiculopathy, unspecified headache, and major depressive disorder due to general medical condition. (Doc. 8-2, at 15). In addition, the ALJ found that Rusak had the following non-severe impairments: generalized osteoarthritis, fatigue, insomnia, restless leg syndrome, other muscle spasm, other chronic pain, and paresthesia of the skin. (Doc. 8-2, at 15).

    C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Rusak's impairments, considered individually or in combination, meet or equal the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-2, at 16). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s), 1.16 (lumbar spinal stenosis resulting in a compromise of the cauda equina), 1.18 (abnormality of a major joint(s) in any extremity), and 12.04 (depressive, bipolar and related disorders). (Doc. 8-2, at 16).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's RFC, crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Rusak alleged disability due to pain in the neck, arm, and hands, loss of concentration and focus, trouble with fine finger movements, headaches, fatigue, sleep issues, and chronic pain. (Doc. 8-2, at 20). The ALJ found that while Rusak's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Rusak's statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 8-2, at 21). The ALJ then went on to detail Rusak's medical records and treatment history, activities of daily living, and medical opinion evidence. (Doc. 8-2, at 21-29). After weighing and considering the evidence of record, the ALJ determined that Rusak had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," with additional limitations:

> [Rusak] is limited to occupations that require no more than occasional postural maneuvers, such as stooping, kneeling, crouching, and climbing on ramps and stairs. She must avoid occupations that require climbing on ladders, ropes, or scaffolds or crawling. She is limited to occupations that require no more than frequent balancing. She is limited to occupations that require no more than occasional overhead reaching or pushing and pulling with the upper extremities to include the operation of hand levers or overhead work. She must avoid concentrated prolonged exposure to temperature extremes, vibration, extreme dampness and humidity, or exposure to hazards such as dangerous machinery and unprotected heights. She must avoid exposure to occupations that present noise levels above level 3 (which is moderate). She is limited to simple, routine, repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of two, and that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. She is limited to occupations which require no more than occasional interaction with supervisors, coworkers, and members of the general public.

(Doc. 8-2, at 19-20).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the

claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, based on the testimony adduced from a vocational expert at Rusak's administrative hearing, the ALJ determined that "the demands of Rusak's past relevant work exceed the limitations in the claimant's residual functional capacity." (Doc. 8-2, at 29). Accordingly, the ALJ determined Rusak was unable to perform past relevant work as actually or generally performed. (Doc. 8-2, at 29).

    F.  STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Rusak was an individual closely approaching advanced age,

as defined by the Regulations.[2] (Doc. 13-14, at 36); 20 C.F.R. §§ 404.1563, 416.963. The ALJ also noted that Rusak has at least a high school education as recognized by 20 C.F.R. §§ 404.1564, 416.964. (Doc. 8-2, at 29). The ALJ determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Doc. 8-2, at 30); 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). The ALJ specifically identified the occupation of an office helper, which is a light exertion unskilled position with approximately 14,000 positions available nationally. (Doc. 8-2, at 30). The ALJ additionally highlighted the positions of a mail clerk (not with UPS or USPS) and a router (not a machine job), both light exertion unskilled positions with 13,000 and 35,000 available positions respectively. (Doc. 8-2, at 30). As a result of this analysis, the ALJ determined that Rusak was not disabled at any time through October 21, 2019, the amended onset date and December 31, 2020, the date last insured and denied her applications for benefits. (Doc. 8-2, at 31).

IV. **DISCUSSION**

On appeal, Rusak advances three arguments for reversal or remand. (Doc. 11, at 4). First, Rusak argues that the ALJ erroneously found the opinion of treating physician Dr. Elizabeth Karazim-Horchos ("Dr. Karazim-Horchos") only partially persuasive instead of persuasive. (Doc. 11, at 4). Second, Rusak asserts the ALJ erroneously found the opinion of the consultative psychologist, Jennifer Betts Psy.D ("Dr. Betts"), only partially persuasive. (Doc. 11, at 4). Third, Rusak argues the ALJ failed to include all of Rusak's credibly

---

[2] On the date of last insured, Rusak was deemed a "younger individual," but has subsequently changed age category. (Doc. 8-2, at 29).

established limitations in her RFC and hypothetical question to the vocational expert.[3] (Doc. 11, at 4).

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Rusak was not disabled. (Doc. 15, at 1). Specifically, the Commissioner contends substantial evidence supports the ALJ's evaluation of Dr. Karazim-Horchos's and Dr. Betts's opinion evidence as "partially persuasive," as well as the ALJ's RCF and Step Five Finding. (Doc. 15, at 11, 18, 22).

    C.   THE ALJ DID NOT ERR IN HER EVALUATION OF OPINION EVIDENCE

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has

---

[3] In Rusak's reply brief she re-asserts her arguments for why the ALJ improperly found Dr. Karazim-Horchos and Dr. Betts's opinions partially persuasive and therefore incorrectly omitted portions of their opinions from the hypothetical question posed to the Vocational Expert. (Doc. 16).

made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Dr. Karazim-Horchos and Dr. Betts.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she

finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must evaluate the supportability of the medical opinion by considering how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ must evaluate the consistency of the medical opinion by considering how "consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). While the ALJ must evaluate these factors, the ALJ is not required to "explicitly reference" them using any "magic words." *Shirley v. Comm'r of Soc. Sec.*, No. 3:21-CV-00455, 2022 WL 3083702, at *6 (M.D. Pa. Aug. 3, 2022) (quoting *Hess*, 931 F.3d at 200; *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022)).

Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue

that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3).

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

Applying the above standard to the present record, the Court finds that the ALJ did not err in weighing the opinions of Dr. Karazim-Horchos and Dr. Betts.

### 1. Dr. Karazim-Horchos's Opinion

The ALJ provided the following analysis of the opinions of Dr. Karazim-Horchos;

> The undersigned finds this opinion partially persuasive. It is persuasive to the extent supported by the doctor's own treatment records (see, e.g., Exhibit 6F, pp. 21, 33, 41, etc.) and consistent with the entirety of the record, such as no need for a cane. However, much of the rest of the opinion is not persuasive, such as the inability to lift 10 pounds occasionally. The undersigned finds this is a give and take with the claimant reporting what she can do. Although the evidence does not support being off task greater than 10 percent of the workday, the evidence does support low stress work, as discussed above. The EMG

results and treatment notes from this doctor do not support the limitations for overhead reaching or use of the hands. . .

(Doc. 8-2, at 28).

With regard to supportability, meaning how well Dr. Karazim-Horchos supported her opinions with medical evidence and supporting explanations, the ALJ found much of Dr. Karazim-Horchos's report was not persuasive because it contained "give and take with what the claimant claimed she could do" and therefore was overly influenced by Rusak. [4] (Doc. 8-2, at 28). The ALJ determined Dr. Karazim-Horchos's conclusions about Rusak's inability to lift 10 pounds occasionally were based on this "give and take." (Doc. 8-2, at 28). In her exam notes from October 21, 2019, Dr. Karazim-Horchos included a statement that Rusak was "concerned that the forms I filled out today seemed to correspond to the amount of disability she feels she has." (Doc. 8-7, at 106). Accordingly, it was not unreasonable for the ALJ to opine that Dr. Karazim-Horchos's report was influenced by Rusak's self-reporting. (Doc. 8-2, at 28); see *Nelson v. Kijakazi*, No. 1:21-CV-450, 2023 WL 2653370 (M.D. Pa. Mar. 27, 2023) (finding that because a doctor had based their opinion on "claimant's subjective reports" as well as the doctor's own observations at an examination, the ALJ was justified in finding unpersuasive portions of the opinion). An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations because, "a plaintiff's own statements 'of symptoms, a diagnosis, or medical opinion,' may not be used to establish the existence of a medically determinable impairment."

---

[4] The Court construes the ALJ's "give and take" language to signify that the ALJ believes Dr. Karazim-Horchos's report was largely based on Rusak's self-reporting and that Dr. Karazim-Horchos's conclusions were overly influenced by what Rusak desired the doctor to report. (Do. 8-2, at 28).

14

*Oduro v. Kijakazi*, No. 3:21-CV-00078, 2022 WL 1215076, at *4 (M.D. Pa. Apr. 25, 2022) (quoting, 20 C.F.R. §§ 404.1521, 416.921); *see also Delgado v. Comm'r of Soc. Sec.*, Civ. No. 20-283, 2021 WL 1686704, at *5 (D.N.J. Apr. 29, 2021). Here, the ALJ made clear that the report was persuasive "to the extent supported by the doctor's own treatment records." (Doc. 8-2, at 28). Where evidence did not support portions of Dr. Karazim-Horchos' opinion, the ALJ reasonably found those specific portions were not persuasive. (Doc. 8-2, at 28).

Concerning consistency, the ALJ found the portions of Dr. Karazim-Horchos's report that were "consistent with the entirety of the record" persuasive. (Doc. 8-2, at 28). However, the ALJ determined the record did not support the doctor's opinion that Rusak had limited use of her hands and limited ability to reach overhead. (Doc. 8-2, at 28). Both Dr. Karazim-Horchos's treatment notes and Rusak's self-reporting indicate she did not have any issue with these movements.[5] (Doc. 8-7, at 54, 96, 114, 126, 140). Also, Rusak's EMG results, which showed normal to mild radiculopathy, were inconsistent with Dr. Karazim-Horchos's opinion that Rusak had a limited use of her arms and hands.[6] (Doc. 8-2, at 28). Accordingly, considered in conjunction with the medical evidence of record and the relevant factors of supportability and consistency, the ALJ properly weighed Dr. Karazim-Horchos's opinions. (Doc. 8-2, at 28).

   2. **Dr. Bett's Opinion**

---

[5] Examination revealed Rusak had "5/5 strength and normal cervical range of motion" and that Rusak "denies any radicular symptoms in her arms. Distally, pinch/grasp appears to be functional. She denies dropping things." (Doc. 8-7, at 54, 96, 114, 126, 140)

[6] The ALJ cited specifically that Rusak's "first upper extremity EMG from May 14, 2019, was normal, with no evidence of a right cervical radiculopathy, or right ulnar or median mononeuropathy" and Rusak's "EMG/NCS on August 12, 2019, [] showed only mild to moderate C6 radiculopathy bilaterally." (Doc. 8-2, at 21)

The ALJ was additionally justified in finding Dr. Betts's report partially persuasive. (Doc. 8-2, at 27). The ALJ provided the following analysis of Dr. Betts's opinion:

> The undersigned finds the opinion of Dr. Betts partially persuasive. It is a one-time self-reported examination, most of which is not consistent with the rest of the record, showing little treatment or complaints and mental status examinations throughout the record otherwise generally within normal limits. Nevertheless, the undersigned has taken this consultative examination into consideration and provided moderate limitations for interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, based on the objective evidence as well as the claimant's reports of difficulty focusing, concentrating, interacting with others, and managing her daily activities (Hearing Testimony). The opinion that the claimant can perform simple work with moderate interaction with the public is supported by her examination findings showing no deficits upon repeat examinations despite the results of the consultative examination showing more serious limitations. However, the opinion that the claimant has marked limitations regarding her ability to interact with supervisors, coworkers and respond appropriately to usual work situations and changes in routine is not supported by the record as a whole. These limitations appear to be based on the claimant's subjective self-report.

(Doc. 8-2, at 27)

Regarding supportability, the ALJ indicated, "the opinion that the claimant has marked limitations regarding her ability to interact with supervisors, coworkers and respond appropriately to usual work situations and changes in routine is not supported by the record as a whole." (Doc. 8-2, at 27). The ALJ continued, "these limitations appear to be based on the claimant's subjective self-report" after a "one-time, self-reported examination." [7] (Doc. 8-1, at 27); see *Statkiewicz v. Kijakazi*, No. 21-cv-4316, 2022 WL 807421, at *10 (D.N.J. Mar. 16, 2022) (finding reasonable an ALJ's conclusion that a physician's report lacked support where

---

[7] Still, the ALJ did not wholly discard Dr. Betts's report, but instead considered the examination when making determinations about Rusak's ability to concentrate, work with others, focus, and manage her daily activities. (Doc. 8-2, at 27).

16

their opinion was largely based on the claimant's self-reporting). The ALJ nonetheless considered the examination to the extent it was supported by the record. (Doc. 8-2, at 27).

In regard to consistency, the ALJ noted that Dr. Betts's conclusions "were not consistent with the rest of the record, showing little treatment or complaints and mental examinations throughout the record otherwise generally within normal limits." (Doc. 8-2, at 27). Dr. Betts's opinion contradicted treatment records from Dr. Karazim-Horchos indicating Rusak displayed normal psychiatric behavior, as well as findings from State agency psychological consults Melissa Lynn Franks Psy.D ("Dr. Franks") and Williams Francis Anzalone, Jr. Psy.D ("Dr. Anzalone"). [8] (Doc. 8-7, at 114, 133-34, 138; Doc. 8-2, at 18, 26, 27); *see* 20 C.F.R. § 404.1520c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be). Whereas Dr. Betts's opinion was not contradicted by the record, the ALJ properly considered her report. (Doc. 8-2, at 18, 19, 24, 25, 26, 27). Accordingly, considered in conjunction with the medical evidence of record and the relevant factors of supportability and consistency, the ALJ properly weighed Dr. Bett's opinion. *See* 20 C.F.R. § 416.920c(b)(2); *see also Mikos v. Berryhill*, No. 3:16-CV-02037, 2018 WL 1514388 (M.D. Pa. Jan. 23, 2018), *report and recommendation adopted*, No. 3:16-CV-2037, 2018 WL 1479362 (M.D. Pa. Mar. 27, 2018) (finding the presiding ALJ did not err when determining a report drafted

---

[8] Dr. Karazim-Horchos found Rusak's affect, mood, and comprehension to be normal during examinations and there were no reported mental health symptoms. (Doc. 8-7, at 114, 133-34, 138). Dr. Franks and Dr. Anzalone found Rusak to have "mild limitations" with memory whereas Dr. Betts found Rusak to be impaired in this area. (Doc. 8-2, at 18). Additionally, whereas Dr. Betts diagnosed Rusak with "severe major depressive disorder," the ALJ indicated, "mental status examinations throughout the record were otherwise generally noted within normal limits." (Doc. 8-2, at 24).

by a psychologist was partially persuasive because the report was based on a one-time, self-report examination and was contradictory to other evidence in the record).

### D. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC AND STEP FIVE FINDING

Lastly, Rusak challenges the ALJ's RFC and Step Five finding. (Doc. 11, at 13). According to Rusak, the question posed to the vocational expert was deficient because it did not include all of her impairments. (Doc. 11, at 13). Specifically, Rusak contends the ALJ failed to include the full opinions of Dr. Karazim-Horchos and Dr. Betts in the RFC and the hypothetical question presented to the vocational expert. (Doc. 11, at 14). As the ALJ only found Dr. Karazim-Horchos and Dr. Betts's opinions partially persuasive and not supported by the record, the ALJ properly excluded the portions of each opinion she found not to be persuasive from the RFC and the hypothetical question. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (providing that a hypothetical question need reflect only those impairments that are supported by the record); *see also SHERRY LEE HOOVER, Plaintiff, v. KILOLO KIJAKAZI, Acting Comm'r of Soc. Sec., Defendant.*, No. 3:22-CV-00575, 2023 WL 6201380, at *9 (M.D. Pa. Sept. 22, 2023) (affirming only credible evidence of impairments and limitations needs to be posed to the vocational expert for purpose of the hypothetical question). Accordingly, her decision to exclude portions of Dr. Karazim-Horchos's and Dr. Betts's opinions in the RFC and hypothetical question was not erroneous.

Rusak also argues that "the jobs to which the Vocational Expert testified do not fit within the parameters of even the inadequate hypothetical." (Doc. 11, at 14). Specifically, Rusak contends, "[t]wo of the jobs cited (office helper and router) require a Reasoning Level of 2, and the third job (mail clerk) requires a Reasoning Level of 3. Reasoning Levels 2 and 3 require the ability to carry out "detailed" instructions." (Doc. 11, at 14); *see* DOT App. C,

1991 WL 668702. Further, Rusak argues that "[i]t is indisputable that an individual limited to only simple work and decisions could not carry out detailed instructions." (Doc. 11, at 14).

In the Dictionary of Occupational Titles ("DOT"), the general educational development of each occupation is described. "General educational development embraces those aspect of education (formal and informal) which are required of the worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702. The GED scale is composed of three divisions, but only one is relevant here—reasoning development. DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C, 1991 WL 688702. In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, Appendix C, 1991 WL 688702.

> The ALJ found Rusak should be;
>
> . . . limited to simple, routine, repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of two, and that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. She is limited to occupations which require no more than occasional interaction with supervisors, coworkers, and members of the general public.
>
> (Doc. 8-2, at 20).

There is no conflict with a limitation of "simple, routine, respective" work and a level 2 or 3 position. *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (stating, "working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive"); *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) ("there is no bright-line rule stating whether there is a per se conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work"). Accordingly, all three positions cited by the vocational expert are supported by the ALJ's finding sufficient to carry the Commissioner's burden at Step Five.

V.  **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Rusak's benefits is **AFFIRMED**, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: December 13, 2023**                                    s/ Karoline Mehalchick
                                                                **KAROLINE MEHALCHICK**
                                                                **Chief United States Magistrate Judge**